IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LCS RESTORATION SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 1:22-00280-KD-B ) |
| HUDSON INSURANCE COMPANY, et al.; | ) ) ) ) |
| Defendants. | ) |

**Order**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Hudson Insurance Company and Brief in Support (Docs. 23, 24); the Response by Plaintiff LCS Restoration Services, LLC (Doc. 28); and Defendant's Reply (Doc. 29); Defendant's Motion to Strike (Doc. 30); and Plaintiff's Response (Doc. 32).

**I.      Defendants Greenwich and Simeon Are Dismissed**

The undersigned's *sua sponte* review of the docket finds that Defendants Greenwich Transportation Underwriters, Inc. ("Greenwich") and Laudaine Simeon ("Simeon") have not answered or otherwise appeared or responded to the complaint. As to Defendant Greenwich, the state court docket indicates that Greenwich was served by personal service upon its registered agent, CT Corporation Systems, on June 17, 2022.  The action was removed to this Court on July 15, 2022. Assuming that service was proper as to Greenwich, it did not file an answer or otherwise respond to the complaint.  LCS did not move for entry of default.

As to Defendant Simeon, the state court docket indicates that service by certified mail issued November 12, 2021, but there is no return of service.  Eight months later, on July 15,

1

2022, the action was removed to federal court. Simeon did not file an answer or otherwise respond to the complaint. Assuming Simeon was served, LCS did not move for entry of default. And if Simeon was not served, LCS did not move the Court pursuant to Rule 4(m) for additional time to effect service. Typically, the 90-day period for effecting service, begins to run when an action is removed to federal court. Robinson v. Bessemer Police Dep't, 2021 WL 3473220, at *4 (N.D. Ala. Aug. 6, 2021) (citing White v. Capio Partners, LLC, 2015 WL 5944943, at *2 (S.D. Ga. Oct. 13, 2015) (collecting cases).

Early in this litigation, LCS was aware of the absence of Simeon and Greenwich because LCS and Hudson were the only participants in the Parties' Planning Meeting. (Doc. 7, Report). Now, ten months have passed since the action was removed. The deadline to join parties has passed, discovery has closed, and the dispositive motion deadline has passed. Thus, LCS has failed to prosecute its action against Simeon and Greenwich.

In this circuit, a district court may *sua sponte* dismiss an action under the authority of either Fed. R. Civ. P. 41(b) for failure to prosecute or the court's inherent power to manage its docket. Williams v. Geo Grp., Inc., 2023 WL 1957496, at *3 (11th Cir. Feb. 13, 2023). At this procedural stage of the litigation, with the final pretrial conference scheduled for June 8, 2023, both grounds are appropriate. Accordingly, this action is **DISMISSED** as to Defendants Simeon and Greenwich. And, as Count II is only against Simeon and a defendant ("Kathan Smith") not named as a party in the complaint, **Count II** is **DISMISSED**.[1]

---

[1] Additionally, Fictitious Defendants 1-25 are **DISMISSED**. "[F]ictitious party pleading is not allowed in federal court and Plaintiff has not sought to substitute any named party for a fictitious defendant." M.B.S. by & through Reed v. Dant Clayton Corp., No. CV 21-0553-MU, 2023 WL 3158945, at *1, n.1 (S.D. Ala. Apr. 28, 2023) (citing Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010)).

**II.     Objections Pursuant to Rule 56**

The Court construes the Motion to Strike (Doc. 30) as an objection pursuant to Fed. R. Civ. P. 56(c)(2). This is because a "declaration in support of a motion for summary judgment is not a pleading and is therefore an inappropriate target of a motion to strike. Addison v. Ingles Market, Inc., No. 3:11–cv–3, 2012 WL 3600844, at *1 (M.D. Ga. Aug. 21, 2012). Indeed, Rule 56 provides that '[a] party may *object* that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.' Fed. R. Civ. P. 56(c)(2) (emphasis added). Such an objection 'functions much as an objection at trial, adjusted for the pretrial setting,' and '*[t]here is no need to make a separate motion to strike.*' Fed. R. Civ. P. 56 advisory committee's note (emphasis added). 'Nonetheless, it is still common for parties to file motions to strike directed at matters that are not contained in pleadings.' Ross v. Corp. of Mercer Univ., 506 F.Supp.2d 1325, 1333 (M.D. Ga. 2007). In such cases, courts tend to treat motions to strike as objections to the challenged portions of affidavits. Id. at 1334. Accordingly, the Court will construe [the] motion to strike as evidentiary objections." Zottola v. Anesthesia Consultants of Savannah, P.C., 169 F. Supp. 3d 1348, 1357 (S.D. Ga. 2013).

Defendant objects to portions of the affidavit of Brad Dawkins ("Dawkins"). (Doc. 30). In sum, Defendant seeks to exclude multiple statements within Dawkins' affidavit that are allegedly: A) not based on personal knowledge and conclusory, B) barred by hearsay, or C) inconsistent with prior deposition testimony. (Doc. 30). Plaintiff responds that the entirety of Dawkins' affidavit is admissible. (Doc. 32).

3

### A. Dawkins' Statements in the Affidavit Are Based on Personal Knowledge

Defendant asserts that the following statements in Dawkins' affidavit "amount to speculation and/or legal conclusions, which could not be within Dawkins' personal knowledge":

> "27.   Hudson has denied the claim made the basis of this lawsuit based on the potential exposure to avoid responsibility for same, not on the facts of the alleged incident."

(Doc. 28-1 at 4; Doc. 30 at 2).

The Court finds that paragraph 27 contains a conclusory statement and has not relied on this statement. (Doc. 28-1 at 4).

> "28.   On February 25, 2021, both LCS and Hudson submitted to an appraisal process whereby both parties were represented by appraisers of their choice to inspect the insured vehicle and agree on a repair evaluation amount…
>
> 30.   Upon consultation with LCS's designated appraiser, LCS learned that Laudaine Simeon had misrepresented the fact regarding an agreement, and that the appraisers, in fact, had not reach an agreement.
>
> 31.   ….Hudson has continually refused to consider and pay certain covered losses.
>
> 32.   To date, Hudson has failed to negotiate the claim in good faith, failed to offer an adequate amount to resolve the claim, and refused to pay sufficient monies to compensate LCS for their damages covered under the Policy."

(Doc. 28-1 at 4-5; Doc. 30 at 2-4, 11).

The remaining statements appear to be based on Dawkins' personal knowledge of what happened during the appraisal process.

### B. Dawkins' Statements in the Affidavit Are Not Barred Hearsay

Defendant asserts that the following statements in Dawkins' affidavit are barred by the rule against hearsay:

> "18.  Michael stated very specifically that he could do his appraisal based off of the Rush Truck Center estimate; this was also confirmed to Chelsea with TTA Appraisal…
>
> 29.  On March 5, 2021, Laudaine Simeon informed LCS that the appraisers had reached an agreement.
>
> 30.  Upon consultation with LCS's designated appraiser, LCS learned that Laudaine Simeon had misrepresented the fact regarding an agreement, and that the appraisers, in fact, had not reach an agreement."

(Doc. 30 at 4; Doc. 28-1 at 3-4).

The Court has reviewed Plaintiff's response (Doc. 32 at 4-7) wherein Plaintiff sets out with specificity the reasons why the aforementioned statements within Dawkins' affidavit are not inadmissible hearsay. The Court agrees that "paragraph 29 of [] Dawkins' affidavit is [] not hearsay because it is a statement being offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." (Doc. 32 at 6) (internal quotations and citations omitted). The other statements have not been relied upon by the Court or are otherwise reducible to an admissible form of evidence.

### C. Dawkins' Statements in His Affidavit Are Consistent with His Earlier Testimony

Defendant asserts that Plaintiff "cannot now offer the affidavit of Brad Dawkins [the 30(b)(6) Representative for LCS] to assert specific repair cost for the vehicle in question because he specifically denied such knowledge at deposition…and failed to bring any documentary

5

support for this claim or amount." (Doc. 30 at 7). Plaintiff responds that "Dawkins testifie[d] to the amount of [] damages and produce[d] actual documents substantiating same." (Doc. 32 at 8). Further, Plaintiff asserts that adding the monetary figures on the multiple documents Dawkins produced at the deposition (Exhibits 6, 7, 8, and 9) equals the amount reflected in the affidavit - $45,715.80. (Doc. 32 at 9).

Upon review of Dawkins' deposition and the exhibits referenced *supra*, the Court is unpersuaded that Dawkins' affidavit "so completely contradicts [his] deposition as to warrant its exclusion." Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1161 (11th Cir. 2012) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)).

### D.  Conclusion

Accordingly, except as set forth above, Defendant's objections (Doc. 30) to Dawkins' Affidavit are **OVERRULED**.

### III.   Factual Background[2]

Plaintiff LCS Restoration Services, LLC ("LCS") entered into an insurance contract (the "Policy") with Defendant Hudson Insurance Company ("Hudson") that had a policy period from October 9, 2019 to October 9, 2020. (Doc. 23-2 at 12). The Policy provided coverage, in pertinent part, for commercial autos liability and physical damage.

On or about November 14, 2019, one of LCS's insured[3] vehicles – a 2014 International WorkStar dump truck – (the "Vehicle") was involved in a motor vehicle accident. (Docs. 23 at

---

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).
[3] The parties do not dispute that the subject vehicle is insured under the Policy.

8; 28 at 2; 23-3 at 3). Prior to reporting the accident to Hudson, LCS took the vehicle to Rush Truck Center and received a repair estimate on November 26, 2019. On or about December 10, 2019, LCS "submitted the claim to Hudson along with the Rush Truck Center estimate and photos." (Doc. 28-1 at 2; Doc. 23-3 at 40). At least by December 11, 2019, without Hudson's consent, LCS had begun making repairs to the vehicle and incurring costs because of "the time-sensitive nature of LCS's business… [and] to get it back in service." (Doc. 28 at 3).

On or about January 7, 2020, Michael with Thompson Insurance Adjustors was sent to inspect the vehicle on behalf of Hudson. (Doc. 28-1 at 3). On or about January 14, 2020, Franklin Insurance Adjusters performed an additional estimate on behalf of Hudson. (Doc. 28-1 at 3). On or about January 24, 2020, Laudaine Simeon of Hudson notified LCS "that a check for $9,695.14 (Franklin Insurance Adjusters estimate minus deductible) was en route to LCS." (Doc. 28-1 at 3). LCS took issue with the sufficiency of this amount, so on January 27, 2020, Hudson requested Franklin Insurance Adjusters to take a "second look" at the vehicle. (Doc. 28-1 at 3).

On or about March 9, 2020, Hudson provided a revised estimate to LCS that would have netted LCS $19,187.11. (Doc. 28-1 at 3; Doc. 23 at 15). On or about March 11, 2020, LCS sent Hudson invoices for the "out of pocket repair costs incurred by LCS" that totaled $45,715.80. (Doc. 28-1 at 4). Hudson did not provide $45,715.80 to LCS.

On or about February 25, 2021, LCS and Hudson participated in an appraisal process. The appraisers were unable to reach a satisfactory agreement. The present action was removed to this Court on or about July 19, 2022. (Doc. 4).

**IV.     Standard of Review on Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving

party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

V.      **Applicable Law**

The parties did not cite to a choice of law provision in the Policy. However, the Policy appears to have been issued and delivered to LCS in Alabama. The incident giving rise to the insurance claim occurred in Alabama. Accordingly, Alabama law applies to the interpretation of the policy. See Stovall v. Universal Construction Co., 893 So.2d 1090 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). Lacking such a contractual specification, we follow the principle of *lex loci contractus,* applying the law of the state where the contract was formed. Brown, 582 So.2d at 506. That state's law then governs unless it is contrary to the forum state's fundamental public policy. Id. at 506–07.").

Since "general rules of contract law and interpretation govern the interpretation of an insurance policy, Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001), the [C]ourt must assign the insurance policy its clear and plain meaning and interpret it to give effect to all terms and provisions. See Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000); Bd. of Water & Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co., 870 So.2d 699, 710 (Ala. 2003). If an insurance policy is ambiguous, or its meaning is in doubt or uncertain, it is construed against the insurer. Scottsdale Ins. Co. v. National Security Fire and

Casualty Ins. Co., 741 So.2d 424, 426, 427 (Ala. Civ. App. 1999)." Cont'l Cas. Co. v. Alabama Emergency Room Admin. Servs., P.C., 623 F. Supp. 2d 1290, 1294 (M.D. Ala.), aff'd, 355 F. App'x 332 (11th Cir. 2009).

VI.     **Analyses**

    A.  **Breach of Contract (Count I)**

Hudson asserts that it acted in accordance with its contractual obligations and LCS failed to comply with the conditions precedent within the Policy because LCS made a voluntarily payment without Hudson's consent. Therefore, Hudson argues, the breach of contract claim fails as a matter of law. LCS responds that Hudson breached the insurance contract by failing to provide adequate compensation as required by the contract for the damage the Vehicle incurred. Hudson replies by arguing that LCS's failure to address its alleged failure to satisfy important contractual conditions constitutes a waiver of the argument.

Under Alabama Law, a plaintiff must prove four elements to recover on a breach of contract claim: "'(1) the existence of a valid contract binding the parties in the action, (2) [their] own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala. 1998) (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995))." Cong. Life Ins. Co. v. Barstow, 799 So. 2d 931, 937 (Ala. 2001); see also Arrington v. Wells Fargo, 842 F. App'x 307, 312 (11th Cir. 2020).

Hudson argues that LCS violated the conditions precedent of the insurance contract by failing to obtain the necessary consent from Hudson prior to incurring voluntary expenses and repairing the Vehicle.  In pertinent part, the Policy provides the following: "**Duties in the Event of Accident, Claim, Suit, or Loss**…you and any other involved 'insured' must: (1) Assume no

obligation, make no payment, or incur no expense without our consent, except at the 'insured's' own cost…" (Doc. 23-2 at 43). Hudson relies on caselaw concerning the voluntary payment doctrine in support of its argument.

LCS did not specifically address why it did not attempt to gain consent prior to repairing the Vehicle. LCS only avers that the repair of the Vehicle was time sensitive due to the nature of its business.

However, for two reasons, the Court is not convinced that the "voluntary payment condition suspended any obligations to LCS by Hudson." (Doc. 24 at 7). First, Hudson has failed to cite <u>any</u> caselaw to support its contention that the voluntary payment condition applies when a third-party is not involved. In this case, the expenses incurred were for repair of the insured's vehicle – <u>not</u> to meet a demand of a third-party. And, there is Alabama caselaw that indicates the doctrine of voluntary payment may only apply when the payment is made to a third-party by the insured based on a legal demand arising out of a covered incident. See <u>U-Haul Co. of Alabama v. Johnson</u>, 893 So. 2d 307, 311 (Ala. 2004) (Under the voluntary payment doctrine, when "one party…pays money to satisfy the <u>colorable legal demand of another</u>, no action will lie to recover such voluntary payment…") (emphasis added).

Second, LCS contends (supported by caselaw) that in order to invoke the voluntary payment condition (even if applicable), Hudson must show it was prejudiced by non-compliance. Hudson fails to adequately address this contention or show any prejudice as a result of LCS's out-of-pocket repair of the Vehicle.

The Court finds that there are issues of fact (i.e., the costs to repair the vehicle) that remain and thus preclude summary judgment on the breach of contract claim.

11

### B. Bad Faith

Under Alabama law, a plaintiff must prove the following in a bad faith denial of coverage claim:

> "(a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
> Requirements (a) through (d) represent the "normal" case. Requirement (e) represents the "abnormal" case."
>
> Employees' Benefit Ass'n v. Grissett, 732 So. 2d 968, 976 (Ala. 1998) (internal cites and quotations omitted).

"Alabama courts have made clear that, '[w]hen a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.' Nat'l Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982). Thus, a plaintiff seeking to prove a bad-faith claim has a heavy burden. Shelter Mut. Ins. Co. v. Barton, 822 So.2d 1149, 1154 (Ala. 2001). To establish a *prima facie* case, the plaintiff 'must show that the insurer's decision not to pay was without any ground for dispute.' Id. (quotation omitted). In so doing, the plaintiff 'must eliminate any arguable reason propounded by the insurer for refusing to pay the claim.' Id. (quotations omitted). In assessing whether the insurer had an arguable reason for denying the claim, the court must look to the information before the insurer at the time it denied the claim. See Bowen, 417 So.2d at 183." Atl. Specialty Ins. Co. v. Mr. Charlie Adventures, LLC, 644 F. App'x 922, 926 (11th Cir. 2016).

Hudson argues that LCS's bad faith claim fails as a matter of law. The Court agrees. LCS has failed to satisfy its stringent burden, LCS has failed to show that Hudson breached the insurance contract, and Hudson had a reasonable basis to dispute coverage. Accordingly, LCS's bad faith claim fails as a matter of law. See Bowers v. State Farm Mut. Auto. Ins. Co., 460 So. 2d 1288, 1290 (Ala. 1984) ("[W]here a legitimate dispute exists as to liability… [an] action for bad faith refusal to pay a contractual claim will not lie.").

**C. Counts 4-7 are Waived as a Matter of Law**

LCS failed to respond Hudson's arguments concerning Fraud (Count IV), Fraudulent Suppression (Count V), Deceit (Count VI), and Negligent, Reckless, or Wanton Hiring, Training, Monitoring, and Supervision (Count VII). (Doc. 28). Hudson argues in its reply brief that LCS's "failure to reference any legal authority constitutes an undeveloped argument and waives the issue." (citing Patrick v. City of Birmingham, 2010 WL 11468979, at *2 (N.D. Ala. Oct. 28, 2010)).

The Court agrees with Hudson, as "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." A.L. v. Jackson Cnty. Sch. Bd., 635 F. App'x 774, 787 (11th Cir. 2015) (internal citations and quotations omitted); see also Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (citation omitted) (holding that a party's failure to make arguments on the merits of an issue waives that issue); see also Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1284 (11th Cir. 2003) (affirming trial court's summary judgment ruling that a plaintiff's claim was abandoned where the non-movant plaintiff failed to address the issue in its memorandum of law in opposition to the defendants' motion for summary judgment). Accordingly, LCS's claims for Fraud (Count IV), Fraudulent Suppression (Count V), Deceit

13

(Count VI), and Negligent, Reckless, or Wanton Hiring, Training, Monitoring, and Supervision (Count VII), fail as a matter of a law. See, e.g., Grant v. Miami-Dade Cty., 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014), aff'd sub nom., 636 F. App'x 462 (11th Cir. 2015) ("Where a [party] fails to respond to an argument in a motion for summary judgment, he waives the argument. Summary judgment [on that issue] is appropriate.").

## VII. Conclusion

Accordingly, for the reasons set forth herein, Defendant Hudson Insurance Company's Motion for Summary Judgment (Doc. 23) is **GRANTED** as to Counts III-VII and **DENIED** as to Count I.

**DONE** and **ORDERED** this the **24th** day of **May 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**